**Bobby IVEY, Plaintiff–Appellee,**

v.

**Michael K. HARNEY, et al., Defendants.**

**Appeal of ILLINOIS DEPARTMENT OF CORRECTIONS.**

**No. 94–2839.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1994.

Decided Jan. 23, 1995.

Matthew A. Rooney, Ronald G. Hayden (argued), Mayer, Brown & Platt, Chicago, IL, for plaintiff-appellee.

Susan Frederick Rhodes, Asst. Atty. Gen., Chicago, IL (argued), for Illinois Dept. of Corrections.

Michael W. Condon, Michael D. Bersani, Hervas, Sotos & Condon, Itasca, IL, for LaSalle County Comm., Anthony Condi and Ed Adams.

Robert J. Baron, Roos, Pitts & Poust, Joliet, IL, for Dr. Haney.

Before EASTERBROOK, MANION, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ While confined at the jail in LaSalle County, Illinois, Bobby Ivey slipped in the shower and hurt his back. He filed an action under 42 U.S.C. § 1983, contending that the medical care provided for his injury violated his rights under the eighth amendment to the Constitution, applied to the states by the fourteenth. By making a claim under the Constitution rather than the common law of torts, Ivey undertook a difficult task. To prevail, he must establish that the defendants intentionally inflicted needless suffering. He may be able to do this by showing that the defendants were "deliberately indifferent" to his "serious medical needs," see *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), but this formula itself requires proof that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). The district court recruited counsel to help Ivey make the required demonstration. Counsel concluded that expert medical evidence is called for and located a physician who is willing to examine Ivey.

■ Problem: the physician is in Chicago, and Ivey is imprisoned at the Taylorville Correctional Center, more than 200 miles away. The physician does not make house calls, let alone range so far from his office. Potential solution: the Illinois Department of Corrections can transport Ivey to Chicago, supervise him during the examination, and return him to Taylorville. Objection: the Illinois Department of Corrections does not make house calls, either. Transportation and lodging for a prisoner and guards is expensive. There is also a risk of escape or mayhem, for Ivey is no shrinking violet. He has been convicted of aggravated criminal assault, aggravated battery, and aggravated criminal sexual abuse. See *People v. Ivey*, 267 Ill.App.3d 310, 204 Ill.Dec. 695, 642 N.E.2d 157 (3d Dist.1994). The State of Illinois has nothing to do with the litigation against the sheriff, chief jailer, and chief medical officer of LaSalle County. And 28 U.S.C. § 2241(c) creates a formidable legal obstacle, providing that "[t]he writ of habeas corpus shall not extend to a prisoner unless ... (5) [i]t is necessary to bring him into court to testify or for trial." (None of the other subsections is relevant.) Ivey does not want to come "into court"; he wants to visit a potential expert witness. Counterstroke: Bypass § 2241 and rely on 28 U.S.C. § 1651(a), which provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." A writ directing his custodian to transport him to Chicago for physical examination would aid his cause, and therefore is "appropriate," Ivey insisted. So the district court held and issued the writ. 1994 WL 401098, 1994 U.S.Dist. Lexis 10403.

The Department of Corrections has appealed, as a custodian ordered to produce its prisoner may do even though the litigation between the parties continues. *Jackson v. Vasquez*, 1 F.3d 885, 887–88 (9th Cir.1993); *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 561 (7th Cir.1986). The custodian is a stranger to Ivey's suit against the three employees of LaSalle County; the order to transport Ivey to Chicago is the only, and therefore the "final," decision in this collateral proceeding. The custodian cannot appeal from the final judgment in the § 1983 suit, and, even if it could, the appeal would be too late, so appellate jurisdiction is secure under the collateral order doctrine in light of the importance of the unresolved legal issue the Department presents. Cf. *Digital Equipment Corp. v. Desktop Direct, Inc.*, —— U.S. ——, —— ——, 114 S.Ct. 1992, 2001–03 (1994).

Although the district court expressed some doubt on this score—suggesting in footnote 2 that it would order Ivey brought to Chicago under § 2241 "in the event that the Court of Appeals concludes that the All Writs Act was improperly invoked"—§ 2241(c) prevents a district court from issuing a writ of habeas corpus that directs a custodian to produce a prisoner for a physical examination. Not just "does not authorize" such a step; § 2241(c) *forbids* it by providing that the "writ of habeas corpus shall not extend to a prisoner unless" one of five criteria obtains. A desire, even a pressing need, for an examination by a potential expert witness does not satisfy any of the five. Ivey depicts the limitations in § 2241(c) as lacunae, which a court may fill in the exercise of sound discretion. The belief that omissions from statutes authorize judicial creativity infuses the district court's analysis, so we pause to inquire what it means to call an omission from a statute a "gap."

Laws often require or permit a court to do something without providing details. Omission leaves in place the common law powers of the federal courts, and using these interstitial powers the courts put flesh on the statutory bones. *Rivera v. Santirocco*, 814 F.2d 859 (2d Cir.1987), provides a good example. Section 2241(c)(5) authorizes the writ of *ha-*

*beas corpus ad testificandum*. The court may direct the custodian to produce the prisoner in court as a witness. What happens if the testimony takes two days? Where does the prisoner stay overnight? For that matter, who guards the prisoner in court? The statute does not say; neither, however, does it subtract from the court's common law powers to control such details. The second circuit ordered the Marshals Service and the FBI to take custody of a state prisoner while the trial continues. Having a secure power to produce the prisoner, the court specified particulars. Our case, by contrast, does not entail questions such as "how?" or "what next?".

Statutory lists may create a second category of gaps. Suppose § 2241(c) began: "The writ of habeas corpus shall extend to a prisoner when ...", followed by the same list that now appears. Such a statute leaves open the question whether other circumstances also justify a writ of habeas corpus. True, one might chant the words *espressio unius est exclusio alterius*, but this maxim never answers the question whether the statutory list is designed as a floor or a ceiling. Section 2241(c) as we have rewritten it might mean that a prisoner is *entitled* to a writ of habeas corpus in the identified cases, leaving others to judicial discretion; or it might mean that only in the listed circumstances is the prisoner even *eligible* for the writ. Language alone does not distinguish the two possibilities (and there are other ways to read such a text). Knowledge of the history of habeas corpus as a common law writ would aid the interpretive project. A judge versed in history might readily read the (rewritten) § 2241(c) as codifying traditional uses of the writ while leaving to the future the decision whether other circumstances also justify commanding a custodian to produce a prisoner.

Before § 2241(c) took its current form, the Supreme Court understood the statutory authority to issue writs of habeas corpus, then part of § 1651, in this way. *Price v. Johnston*, 334 U.S. 266, 278–86, 68 S.Ct. 1049, 1056–61, 92 L.Ed. 1356 (1948), held that a court of appeals may direct a warden to produce a prisoner for oral argument. Al-

lowing a prisoner to argue his case in the district court has the sanction of history and is implied by the authorization to produce a prisoner for "trial"; the Court thought that the continuation of a case on appeal is sufficiently similar to justify the same treatment, if the court of appeals deems it prudent. Producing a prisoner in court is a standard function of the writ. Similarly, *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), held that a court may use § 1651 to authorize the installation of a pen register device on a telephone line, because this is similar to the power to issue search warrants and wiretap orders. Statutes and rules governing warrants and wiretaps neither authorize nor forbid pen registers; knowledge that most new features in the law of search and seizure had developed through the common law, and only then been codified, led the Court to treat the statutory list of authorized orders as a floor rather than a ceiling. Because an order to install a pen register is a cousin to an order authorizing a wiretap—a pen register requires the same sort of access to telephone lines but intercepts only the numbers dialed rather than the contents of phone conversations—the Court thought such an order "agreeable to the usages and principles of law" under § 1651(a). See also, e.g., *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Once again, however, this category of statutory "gap" requires language that is open-ended; § 2241(c) in its current incarnation is close-ended, a ceiling rather than a floor.

Still a third kind of gap arises when for one reason or another the normal rule does not apply to some class of cases. The court then must decide whether this means that the usual treatment is forbidden, or only that the case is not yet provided for. *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), is an apt example. A prisoner wanted his custodian to answer interrogatories. The Supreme Court understood Fed.R.Civ.P. 81(a)(2) to mean that the discovery provisions of the civil rules do not apply to actions seeking writs of habeas cor-

pus. 394 U.S. at 292–98. Not until 1977, when two sets of rules for collateral proceedings came into force, did rules established under the Rules Enabling Act address the subject. Did the exclusion in Rule 81(a)(2) mean that interrogatories were forbidden, or only that the Rules of Civil Procedure had nothing to say about discovery in such cases? The Court chose the latter understanding. After all, courts need evidence to decide whether to issue writs of habeas corpus, and it takes more than a declaration that a given set of rules is inapplicable to divest courts of their traditional power to require the parties to provide evidence before trial. No one supposes that the federal rules of procedure regulate every aspect of every case; courts may provide by local rule and by order in individual cases for procedures when the national rules are silent. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648 (7th Cir.1989) (en banc).

When a rule addresses a subject and expressly or implicitly forbids a particular procedure, however, a court may not treat the lack of authority as a "vacuum" to be filled by the very procedure that was excluded. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–55, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *United States v. Payner*, 447 U.S. 727, 733–37, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Strandell v. Jackson County*, 838 F.2d 884 (7th Cir.1988). Statutes and rules supersede the common law powers of the federal courts. Thus the Court had no difficulty concluding in *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985), that, when a state prisoner must be produced to attend a federal trial, the state is responsible for transportation. The statute names the custodian as the addressee of a writ of habeas corpus. That the custodian is not a party to the litigation is irrelevant, the Court held; by providing that the writ "shall be directed to the person in whose custody the party is detained", 28 U.S.C. § 2243 deprived the federal court of any power to require the Marshals Service to perform that task. Section 1651, the All Writs Act,

is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

474 U.S. at 43, 106 S.Ct. at 361.

By the same token, a court may not enlarge a closed-ended statutory list either by "interpreting" the list to be open-ended or by invoking § 1651(a). *McGill v. Duckworth,* 944 F.2d 344, 353–54 (7th Cir.1991). Consider, for example, a prisoner's request to have the assistance of another inmate at trial. All questions of prudence to one side, § 2241(c) forbids the issuance of a writ of habeas corpus for this purpose—and, the third circuit has held, a court may not employ § 1651(a) to evade this limitation. *Jones v. Lilly,* 37 F.3d 964 (3d Cir.1994).

■ What we have said so far shows that § 2241(c)(5) does not create a "gap" that a judge may fill. The statute does not say "if X then a court may issue the writ," leaving the treatment of case Y ambiguous. It says "unless X a court must not issue the writ." To call the treatment of case Y a "gap" and to issue the writ anyway would be to alter the structure of the statute, to transmute an "unless ... not" form into an "if ... then" form, to change a prohibition into an authorization. And for the same reason the Court held in *Pennsylvania Bureau of Correction* that a court may not override § 2243 by invoking the All Writs Act, we hold that a court may not override § 2241(c)(5) by pointing to § 1651(a).

No one doubts that the All Writs Act may justify extraordinary relief when § 2241 does not. Section 2241 is limited to writs of habeas corpus, and § 1651(a) permits courts to issue other kinds of writs. The fact that a writ of habeas corpus may not issue in a particular situation does not compel a conclusion that no other writ is available. See *Pennsylvania Bureau of Correction,* 474

U.S. at 43, 106 S.Ct. at 361; see also *Adams v. United States ex rel. McCann,* 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942). Yet what other writ would be appropriate here? Ivey does not identify one, and we do not think that § 1651(a) authorizes one, for the All Writs Act contains limitations that prevent a judge from using it to undermine other laws.

Section 1651(a) authorizes only writs "agreeable to the usages and principles of law." "In determining what auxiliary writs are 'agreeable to the usages and principles of law,' we look first to the common law." *United States v. Hayman,* 342 U.S. 205, 221 n. 35, 72 S.Ct. 263, 96 L.Ed. 232 (1952). See also *Lowery v. McCaughtry,* 954 F.2d 422 (7th Cir.1992). Nothing in the common law supports an order directing a third party to provide free services that facilitate litigation. Consider a hypothetical parallel: suppose Ivey, recently released from prison, lacked the funds to travel to Chicago to meet the physician. Could a court order United Airlines to fly Ivey to Chicago free of charge for this purpose? Cf. *Newman v. Metropolitan Pier & Exposition Authority,* 962 F.2d 589 (7th Cir.1992) (a plaintiff's failure to attend her own deposition is not excused by a plea of poverty, so the court may dismiss the case as a sanction). Could the court order the physician to travel to Taylorville to examine Ivey? Could the court order the physician to donate his services, so that an impoverished litigant had a better chance of prevailing? Could the court order West Publishing to hand over a set of law books, or Apple Computer to provide a PowerBook and laser printer, so that a prisoner could better conduct litigation? We know from *Mallard v. United States District Court,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), that a court may not order even a member of its bar to donate services to a plaintiff in an action under 42 U.S.C. § 1983. Lacking such power over lawyers admitted to practice, the court is hardly in a position to conscript physicians, legal publishers, common carriers—or wardens. Judges lack authority to redistribute wealth toward plaintiffs. A case may end with a judgment for the payment of money, but such an order

depends on proof of wrong-doing and injury inflicted by the defendant.

Of course the Illinois Department of Corrections is not a stranger to Ivey, even though it is a stranger to this suit. Yet Ivey's captivity is lawful; a judgment whose validity he does not question permits Illinois to confine him where it will. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Ivey could prosecute this litigation better if he were a free man, or if he were imprisoned in Chicago rather than Taylorville, but that reality does not make him free, require his relocation to the prison most favorably situated to his pending litigation, or compel his custodian to act as his chauffeur. Lawful incarceration curtails many opportunities. *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Filing a civil suit does not even entitle the prisoner to attend the trial of his own case. *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir.1976); cf. *In re Warden of Wisconsin State Prison*, 541 F.2d 177 (7th Cir.1976).

If the Illinois Department of Corrections proposed to block a physician from examining Ivey, a district judge might properly employ § 1651(a). Prisoners have constitutional rights of access to the courts, and as a prison must permit legal mail to come and go, so it must permit lawyers and physicians access to the prisoner. Access satisfies the constitutional requirement, however: the prison may require the lawyer to visit the prisoner, rather than escorting the prisoner to his lawyer's offices. Ivey's lawyers, based in Chicago, have not suggested that a court may compel the Illinois Department of Corrections to produce Ivey in their anteroom; why is a proposed examining physician different? A prison may provide a core collection of law books to its charges, rather than escorting them to a full law library—and they must make do with books even though counsel doubtless would stand them in better stead. *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); cf. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Sands v. Lewis*, 886 F.2d 1166 (9th Cir.1989) (prisoners lack a constitutional right to memory typewriters, even though these would aid litigation). Illinois says that it will permit the potential expert or another physician to examine Ivey in the infirmary of the Taylorville Correctional Center. We may assume that a hospital in Chicago is better equipped for the examination, but if the fact that the library of Northwestern University Law School is better equipped for legal research than is the library at Taylorville Correctional Center does not earn Ivey transportation to Chicago, neither does the difference in medical equipment.

It may be that without a physical examination Ivey has no hope of prevailing in the underlying litigation—although at oral argument his lawyer said that he would not throw in the towel if we reversed. If expert assistance is essential, Ivey's lawyers should find a willing physician in Taylorville or environs (Springfield is only 20 miles away). Or they should offer to compensate the Department of Corrections for the cost of transportation and security. Lawyers often advance the fees and costs of expert assistance in tort litigation (of which Ivey's "constitutional tort" suit is a species), expecting to recover the outlays on the successful conclusion of the litigation. See *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir.1991); ABA, *Model Rules of Professional Conduct* 1.8(e) (1994 ed.). We do not know whether Illinois would be receptive to financial overtures or whether Ivey's prospects are bright enough to justify them—but then, if Ivey and his lawyers are unwilling to bear the full costs of a physical examination, why could the court order a stranger to incur the expense? That is a subject between Ivey and his jailers. The only question before us is whether a court may order a custodian to transport the prisoner outside the prison to acquire evidence in a suit to which the custodian is not a party. Under both § 1651(a) and § 2241(c)(5), the answer is no.

REVERSED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

I agree with the court's analysis of 28 U.S.C. § 2241(c) and the All Writs Act in the

circumstances of this case, and I therefore join Judge Easterbrook's opinion. I am not without some sympathy, however, for the district court's objective in invoking the All Writs Act and issuing the transportation order below. Although I too believe that Congress has closed any avenue for judicial relief in this area, I am troubled by how that decision might affect the ability of prisoners like Bobby Ivey to pursue their constitutional claims in federal court. I offer the following thoughts in that regard.

It is axiomatic that individuals who are lawfully incarcerated in state correctional facilities have a constitutional right of access to the courts. *See ante* at 186. That right enables prisoners to enforce the Eighth Amendment's assurance against cruel and unusual punishment, for if state custodians were able to limit the access of their charges to the courts, their conduct would effectively be insulated from judicial review, no matter how cruel or unusual. The right of access is therefore central to the protection of perhaps the most sacred of a prisoner's constitutional rights.

Here, the State of Illinois did not prevent Ivey from petitioning the court, and because the district court was sufficiently impressed by his complaint, it appointed diligent counsel to assist Ivey in developing and prosecuting his claim. Yet when appointed counsel informed the district court that expert medical testimony would be required, the district court faced a considerable quandry—the only available medical expert was located in Chicago and could not examine Ivey at Taylorville.[1] Citing the costs and risks involved in transporting Ivey to Chicago, the Illinois Department of Corrections ("IDOC") refused, although it agreed, as it must, that the physician could examine Ivey at Taylorville. Believing that the IDOC's position would prevent Ivey from vindicating his constitutional rights in federal court, Judge Castillo intervened, invoking the All Writs Act to order that the IDOC take Ivey to Chicago for a medical examination.

Absent section 2241(c), I would readily endorse the district court's action, as it would seem to follow logically from the prisoner's constitutional right of access to the federal courts. Indeed, what good is access to the courts if the only means of proving one's case may be completely foreclosed by the State? What's more, should the State's refusal in these circumstances escape judicial scrutiny, or should district judges be given some discretion to decide that a prisoner-plaintiff may be entitled to a limited writ in an extraordinary case? These are perplexing questions, but they ultimately are not for me or for this court to decide. Congress has addressed the issue, and I agree with my colleagues that the restrictive language of section 2241(c) deprives the district court of any authority to intervene.

Yet it seems to me that Congress' decision to foreclose that option puts prisoners in a difficult bind. Although section 2241(c) on its face does not restrict a prisoner's right of access to the courts, it may effectively nullify that right in a particular case. The present circumstances are an apt example, for despite counsel's unwillingness to concede the point at argument (*see ante* at 186), Ivey surely has little chance of succeeding below without expert medical testimony to support his claim. To be sure, one may question Ivey's representation that the Chicago physician was the *only* expert available to him, but the district court apparently accepted that unchallenged assertion, and I would be reluctant on this record to second-guess the court's judgment in that regard. But perhaps more importantly, I fear the State will use today's decision to discourage similar writs when the circumstances for judicial intervention may be far more compelling.

Consider, for example, the following hypotheticals we posed to the State's counsel at oral argument: Assume that Ivey's Chicago physician had traveled to Taylorville and had examined him there, that the examination uncovered preliminary evidence that might support Ivey's claim, but that the physician insisted on further testing that could only be performed at an outside medical facility. Alternatively, assume that the initial examination itself required equipment that only was

---

1. Apparently, no one disputed counsel's representation that the proposed physician was the

only expert available or that he was unable to travel to the prison.

available at an outside facility. The IDOC asserted in response to our questions that the district court would lack authority to order the prisoner transported for testing in either circumstance. My colleagues no doubt would agree that the State's position is consistent with the interpretation of section 2241(c) we adopt today. But if the effect of that decision is to deprive the *plaintiffs in my hypotheticals* of any opportunity to succeed on their claims, then I must question whether Congress' allocation of the balance of power in these circumstances is indeed appropriate.

Perhaps in the more compelling circumstances of my hypotheticals, the State would be willing to accommodate the prisoner's need for outside medical testing so long as it was reimbursed for its costs. *Cf. ante* at 186. But does the State have any incentive to cooperate after our decision today? In this case, defendants all are county officials, as Ivey's alleged injuries occurred at a county jail. Yet in most of these cases, the defendants will be employees of the State of Illinois, and can we really expect the State to cooperate with a prisoner's attempt to develop a case against one of its own? *Cf. Anderson v. Romero,* 42 F.3d 1121, 1122–23 (7th Cir.1994) (detailing IDOC's refusal to cooperate with counsel for a deceased prisoner-plaintiff by providing information in its possession as to next of kin). I fully appreciate the State's interest in avoiding the costs and risks attendant to compliance with the district court's writ, but I am troubled that Congress has seen fit to provide such unfettered authority to potentially-interested state officials, while at the same time depriving our judicial officers of any discretion to further the interests of justice in a particular case.