# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2011

No. 10-70018

Lyle W. Cayce
Clerk

EDWIN HART TURNER,

Petitioner - Appellant

v.

CHRISTOPHER B. EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:07-CV-77

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Edwin Hart Turner ("Petitioner") seeks a Certificate of Appealability ("COA") on his claim that he received ineffective assistance of counsel during the mitigation phase of his capital case. In the alternative, Petitioner requests that we remand to the district court for an evidentiary hearing on his claim. After review, we find that Petitioner has not made a substantial showing of the denial of a constitutional right and, therefore, we deny his COA on this ground.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-70018

Petitioner is also not entitled to a COA on his claim that the district court abused its discretion in choosing not to hold an evidentiary hearing.

## I. Facts and Procedural History

On December 12, 1995, Petitioner and another individual, Paul Stewart, were drinking beer and smoking marijuana while driving around in Stewart's car. Eventually, Petitioner and Stewart decided to rob convenience stores in Carroll County, Mississippi. They first drove to Mims Truck Stop, but left after finding it too crowded. They then drove to Mims Turkey Village Truck Stop, about four miles away. At around 2:00 a.m. on December 13th, the two entered the store wearing masks and carrying rifles. Petitioner shot the store clerk in the chest. Petitioner and Stewart then tried to open the cash register, and at one point, both men shot at the register. After their unsuccessful attempts to open the register, Petitioner placed the barrel of his rifle inches from the store clerk's head and shot him.

Petitioner and Stewart then drove back to Mims Truck Stop. While Stewart went inside the store, Petitioner approached Everett Curry, who was pumping gas outside. Petitioner ordered Curry to the ground, robbed him, and shot him in the head. Meanwhile, inside the store, Stewart grabbed some of the store's cash. Petitioner then came into the store and pointed his gun at the people inside. Stewart testified at trial that he told Petitioner there was no need to kill anyone else because Stewart already had the money from the cash register. The pair left the store and returned to Petitioner's home. The next morning, police officers arrived at Petitioner's home and found the two guns used in the crimes inside. They also found the hockey mask Stewart used during the robberies in the backseat of Petitioner's car.

After the two were arrested, Stewart gave a full confession and pleaded guilty to two counts of capital murder. As part of his plea, Stewart agreed to testify against Petitioner. The jury ultimately found Petitioner guilty of two

No. 10-70018

counts of capital murder while engaged in an armed robbery and imposed the death penalty. The convictions and death sentence were affirmed on direct appeal. *Turner v. State*, 732 So. 2d 937 (Miss. 1999), *cert. denied*, *Turner v. Mississippi*, 528 U.S. 969 (1999).

Petitioner then filed for post-conviction relief in Mississippi state court. In support of his habeas petition, Petitioner submitted numerous affidavits from family members, as well as an affidavit from Petitioner's girlfriend at the time of the crimes. Petitioner claimed that these affidavits showed his trial counsel's lack of sufficient investigation and presentation of mitigation evidence during the sentencing phase of the trial. Petitioner also provided the state court with an affidavit from a doctor offering a different assessment of Petitioner's mental illnesses from that offered by the expert witness called by the defense during the mitigation phase. The Mississippi Supreme Court denied the habeas petition, finding that: Petitioner had not shown a deficiency in counsel's pre-trial investigation or performance; the information provided in the affidavits was cumulative of testimony given at trial; and counsel's decision not to call additional mitigation witnesses was a strategic choice within counsel's range of discretion. *Turner v. State*, 953 So. 2d 1063 (Miss. 2007).

Petitioner subsequently filed for habeas relief in federal district court on numerous grounds. The district court denied the petition, finding that Petitioner did not rebut the Mississippi Supreme Court's factual findings by clear and convincing evidence and Petitioner had not shown that the Mississippi Supreme Court's application of the *Strickland* standard was unreasonable.[1] In the same memorandum opinion and order, the district court also denied Petitioner's request for an evidentiary hearing and his request for a COA. After the district court denied Petitioner's motion to alter or amend judgment, Petitioner timely

---

[1] The *Strickland* standard governs ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).

3

appealed to this court, seeking a COA on his claim of ineffective assistance of counsel. In the alternative, Petitioner seeks a remand for an evidentiary hearing.

## II. Standard of Review

### A. COA and AEDPA Requirements

The habeas petition in this case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a petitioner must obtain a COA before he can appeal a district court's denial of requested habeas relief. 28 U.S.C. § 2253(c)(1); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). A COA will not issue unless the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing is made if a petitioner demonstrates that "the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Shisinday v. Quarterman*, 511 F.3d 514, 520 (5th Cir. 2007) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal citation and quotations omitted)). A claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that the petitioner will not prevail. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). When determining whether to grant a COA, we do not fully consider the underlying factual and legal bases in support of the petitioner's claim. *Miller-El*, 537 U.S. at 336; *Sonnier v. Quarterman*, 476 F.3d 349, 355-56 (5th Cir. 2007). Rather, we conduct only a limited, threshold inquiry into the underlying merits. *Sonnier,* 476 F.3d at 356. In capital cases, we resolve doubts over whether a COA should issue in the petitioner's favor. *Id.*

In determining whether reasonable jurists would debate the district court's assessment of Petitioner's claims, we keep in mind that the district court must make its decision pursuant to AEDPA's deferential standards. *Reed v.*

No. 10-70018

*Quarterman*, 504 F.3d 465, 471 (5th Cir. 2007). AEDPA dictates that a court cannot grant habeas relief on any claim adjudicated on the merits by a state court unless the petitioner meets the requirements of 28 U.S.C. § 2254(d). The petitioner can obtain relief if he demonstrates that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).

Under the "unreasonable application" clause, a federal court may grant relief if the state court identified the correct legal principle, but unreasonably applied that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Relief may be granted under the "contrary to" clause when the state court: (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). In reviewing a state court's decision, this court focuses on "the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).

Alternatively, a petitioner may obtain habeas relief under § 2254(d)(2) when the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams*, 529 U.S. at 386. A state court's factual determination is "not

5

No. 10-70018

unreasonable merely because the federal court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).[2]

## B. *Strickland/Wiggins* Standard

Petitioner does not contend that he is innocent of the two victims' murders or the commission of the accompanying robberies. Instead, he focuses his claims for habeas relief on the sentencing phase. The familiar *Strickland* standard, applied to capital sentencing in *Wiggins*, governs Petitioner's claim that his constitutional rights were violated due to the ineffective assistance of counsel. U.S. CONST. amend. VI; *Wiggins*, 539 U.S. at 521 (citing *Strickland*, 466 U.S. at 686-87 as establishing the legal principles that govern claims of ineffective assistance of counsel). To show denial of effective counsel, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms; and (2) but for counsel's deficient performance, a reasonable probability exists that the result of the proceeding would have been different. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006) (citing *Strickland*, 466 U.S. at 687).[3] A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). We review a district court's findings of fact for clear error and its legal conclusions de novo. *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

---

[2] We do not make any pronouncements as to whether the more deferential standard prescribed in § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2). The Supreme Court has left open the question of the relationship between those two provisions. *See Wood*, 130 S. Ct. at 849 (noting circuit split on this issue, but finding it unnecessary to address because the state court's finding that counsel made a strategic decision was not an unreasonable determination of the facts under § 2254(d)(2)). We do not believe that the state court's findings were an unreasonable determination of the facts under § 2254(d)(2) and, therefore, we do not need to consider the more deferential standard.

[3] The rule set forth in *Strickland* is "clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 391.

**1. Counsel's Performance**

When reviewing counsel's performance, a court should make every effort to "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Judicial scrutiny of counsel's performance is highly deferential, and there is a "strong presumption that counsel performed adequately and exercised reasonable professional judgment." *Virgil*, 446 F.3d at 608 (internal citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins*, 539 U.S. at 521-22 (quoting *Strickland*, 466 U.S. at 690-91). However, courts are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999). If counsel did not make an informed decision, the court must reject an assertion of strategy. *Lockett v. Anderson*, 230 F.3d 695, 715 (5th Cir. 2000).

To render performance that is constitutionally sufficient, counsel should pursue all reasonable leads. *Wiggins*, 539 U.S. at 524. In evaluating counsel, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. *Id.* at 527. However, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). "Questioning a few more family members and searching for old records can promise less than looking for a needle in a haystack, when a lawyer

truly has reason to doubt there is any needle there." *Id.* at 389. Additionally, "[c]ounsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying that a reviewing court will substitute its own judgment . . . and rule that his performance was substandard for doing so." *Smith v. Cockrell*, 311 F.3d 661, 676-77 (5th Cir. 2002), *overruled in part on other grounds*, *Tennard v. Dretke*, 542 U.S. 274 (2004); *Wilson v. Sirmons*, 536 F.3d 1064, 1089 (10th Cir. 2008) (noting that, to a degree, counsel should be able to rely on an expert to determine what evidence is necessary to an effective evaluation, and what additional evidence the expert needs to complete testing).

### 2. Prejudice

The prejudice prong of the *Strickland/Wiggins* standard asks "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams*, 529 U.S. at 393 n.17. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* If the state court did not reach the prejudice prong, a federal court reviews that prong de novo. *Wiggins*, 539 U.S. at 534. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

The petitioner carries the burden of showing prejudice. *Sonnier*, 476 F.3d at 358. Such a showing is made if "there is a reasonable probability that at least one juror would have struck a different balance." *Wiggins*, 539 U.S. at 537; *Lockett*, 230 F.3d at 715 (discussing the requirement of unanimity among all jurors to impose the death penalty under Mississippi law and stating that if "a juror could have reasonably concluded that the death penalty was not an appropriate penalty in this case based on the mitigating evidence, prejudice will

have been established"). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

A federal appellate court assessing prejudice during the sentencing phase of a capital proceeding must re-weigh the totality of the available mitigation evidence—both that adduced at trial and the evidence adduced in the habeas proceeding—against aggravation evidence. *Williams*, 529 U.S. at 397; *Wiggins*, 539 U.S. at 534. To establish prejudice, the new evidence must be so compelling as to create a reasonable probability that a juror could have reasonably assessed Petitioner's moral culpability differently. *Neal*, 286 F.3d at 241.

### III. Discussion

Keeping the appropriate standards in mind, we must determine whether reasonable jurists could debate the propriety of the district court's resolution of Petitioner's claim for habeas relief. We address each argument raised by the Petitioner in turn.

### A. Ineffective Assistance of Counsel

#### 1. Reasonableness of the State Court's Factual Findings

Petitioner has not shown that the reasonableness of the state court's findings of fact is debatable. The state court was not unreasonable in finding that almost all of the background factual information contained in the affidavits attached to the habeas petition tracked the testimony of the three defense witnesses during the sentencing phase. Those three witnesses testified to Petitioner's tragic upbringing, the alcohol abuse by Petitioner's parents, Petitioner's involuntary commitments to mental institutions, and Petitioner's two attempted suicides. While some of the new affidavits may have provided more details or a slightly different perspective, we cannot find that this renders unreasonable the state court's factual determination that such testimony was cumulative.

No. 10-70018

Further, we do not find that reasonable jurists could debate whether the state court was unreasonable in finding that counsel interviewed "numerous" or "many" witnesses during the course of the pre-trial investigation. The affidavits provide that counsel interviewed at least five witnesses prior to the sentencing phase, and we will not discredit a state court's finding simply because Petitioner objects to the use of the term "many." We also note that the state court further supported its holding as to the sufficiency of the pre-trial investigation with an unchallenged finding that counsel reviewed Petitioner's extensive medical and psychiatric files.

### 2. State Court Application of the *Strickland/Wiggins* Standard

Turning to the state court's application of the *Strickland/Wiggins* standard, we ultimately find that reasonable jurists could not debate whether the state court unreasonably applied *Strickland/Wiggins* when it held that counsel's pre-trial investigation was sufficient. The record demonstrates that counsel interviewed several witnesses and reviewed Petitioner's medical and psychiatric files. Further, counsel hired two different experts to evaluate Petitioner before trial. Although counsel utilized one of those experts at trial (Dr. Galvez), Petitioner urges that counsel should have interviewed more witnesses and conducted an investigation into the effects of Prozac on Petitioner's mental state at the time of the crimes. Petitioner claims that additional investigation would have led counsel to uncover evidence of Petitioner's increasingly strange behavior just before the crimes, as well as a family history of mental illness. Such information, Petitioner avers, was not provided to the defense's testifying expert and, had it been, that expert would likely have diagnosed Petitioner with a different mental illness or testified that Prozac exacerbated Petitioner's mental illness rather than helped to cure his depression.

No. 10-70018

As to whether counsel should have interviewed more witnesses, Petitioner has not shown that jurists of reason would debate the merits of this claim.   We note that "an attorney must engage in a reasonable amount of pre-trial investigation and[,] at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case." *Harrison v. Quarterman*, 496 F.3d 419, 425 (5th Cir. 2007) (quoting Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994)).  If counsel does not speak to a witness, "counsel is 'ill-equipped to assess [the witness's] credibility or persuasiveness . . . .'" Anderson v. Johnson, 338 F.3d 382, 392 (5th Cir. 2003) (quoting Bryant, 28 F.3d at 1419)); see also Sonnier, 476 F.3d at 358 (concluding that the trial counsel did not make a reasonable investigation because counsel did not talk to the defendant's family and acquaintances at the length or in the depth required, thus making it unlikely that counsel's investigation would uncover mitigation evidence).  However, "there comes a point at which evidence from more distant relatives can reasonably be expected to be only cumulative, and the search for it distractive from more important duties." Bobby v. Van Hook, 130 S. Ct. 13, 19 (2009).

Even if it were debatable whether counsel did as thorough a job as appropriate in interviewing witnesses, we conclude that jurists of reason would not debate the prejudice prong even under a less deferential standard of review.[4] Most of the testimony that would have been provided by these additional witnesses is cumulative of that actually presented during the mitigation phase. Any new evidence provided in the affidavits of the family members is not significant enough to render it debatable among jurists of reason whether a juror would have decided against imposing the death penalty based upon this additional evidence.

---

[4] Here, we use a de novo standard of review rather than the usual AEDPA standard because the state court did not reach this prong.  *Wiggins*, 539 U.S. at 534.

No. 10-70018

Turning to the issue of investigation into the effects of Prozac,[5] we again cannot find that reasonable jurists would debate whether counsel rendered deficient performance by failing to uncover evidence of Petitioner's strange behavior, Petitioner's family history of mental illness, or that Prozac could potentially trigger or exacerbate mania.  Even if counsel was or should have been aware that Petitioner acted increasingly strangely in the months leading up to the crime, it is difficult to see how this information would cause reasonable counsel to conduct more investigation, especially given Petitioner's extensive history of mental illness.

Further, counsel hired two independent experts to examine Petitioner, and the testifying expert testified that he reviewed approximately eighteen inches worth of medical records in preparing his diagnosis.  While counsel cannot completely abdicate a responsibility to conduct a pre-trial investigation simply by hiring an expert, counsel should be able to rely on that expert to alert counsel to additional needed information or other possible routes of investigation.  Both experts hired by the defense, the prosecution's testifying expert, and doctors from Whitfield Institution diagnosed Petitioner with a combination of depression, borderline personality disorder, and alcohol and substance abuse issues.  These doctors were aware of Petitioner's increased Prozac dosage just prior to his transfer to Whitfield.  Yet, none of these doctors opined that Petitioner suffered from bipolar disorder or schizoaffective disorder, as now averred by Petitioner's post-conviction expert.  Petitioner has not submitted an affidavit from Dr. Galvez, the defense's testifying expert, stating that he would have changed his testimony or diagnosis if he had the additional information

---

[5] We note that it makes no difference to our analysis that the state court did not mention this specific issue in rendering its decision.  We only look to the ultimate conclusion of the court in determining its reasonableness, not whether the court analyzed every angle of the evidence.  *Neal*, 286 F.3d at 246.

12

regarding Petitioner's strange behavior and his family history. *Compare Smith*, 311 F.3d at 676 (finding counsel's actions in relying on his expert were not deficient and noting that the petitioner presented no evidence that the expert would have changed his opinion had he been presented with additional test results that were largely similar to those already used), *with Wallace v. Stewart*, 184 F.3d 1112, 1116 (9th Cir. 1999) (finding counsel's performance deficient and noting that doctors testifying both for and against the petitioner agreed that their diagnoses were at least incomplete because they did not receive family background information from counsel).

We further agree with the district court's finding that the opinions expressed in the new expert affidavits, some of which were submitted by Petitioner to the district court for the first time, indicate a mere disagreement among experts.[6]  At best, these affidavits only speculate as to what the defense expert would have said if he had this information.  Further, the only timely submission to the district court was Dr. Zimmerman's affidavit.  His affidavit is wholly conclusory about the effects of Prozac on an individual such as Petitioner. Further, he purports to opine "to a reasonable degree of medical certainty," but he is a psychologist, not a medical doctor.

Even assuming that counsel should have done more investigation into Petitioner's family history and the effects of Prozac, we find that reasonable jurists could not debate whether Petitioner has demonstrated resulting prejudice. The jury heard testimony from three family members and the defense expert about Petitioner's significant history of mental illness and suicide attempts.  We cannot see how testimony that a relative also had a mental illness or that Petitioner acted increasingly strangely just before committing the crimes

---

[6] The district court did not consider one of the expert's declarations, finding that Petitioner was untimely in presenting it for the first time in a motion to alter the district court's judgment.

would have a reasonable probability of changing the outcome absent expert testimony linking such evidence to some deeper mental issue at the time of the crimes. The defense expert testified that Petitioner suffered from at least three mental illnesses: borderline personality disorder, major depression, and substance and alcohol abuse. The defense expert further stated that Petitioner was under extreme mental or emotional disturbance at the time of the crimes.[7] Even the prosecution's own expert conceded that Petitioner may have had difficulty appreciating the criminality of his conduct or conforming his conduct to the requirements of the law. While the prosecution's expert attributed those difficulties more to alcohol and substance abuse than to organic mental illness, defense counsel pointed out during cross-examination that the mitigating factors did not delineate the cause of Petitioner's impairment. Ultimately, Petitioner has not provided more than speculative evidence as to whether the defense's expert would have testified differently. Further, Petitioner has not shown how a different diagnosis would have been of such a compelling nature as to make it debatable whether a reasonable probability existed that at least one juror would have decided against imposing the death penalty.

Finally, to the extent Petitioner's claim is that more experts should have been called, jurists could not debate whether the state court was unreasonable in finding counsel's performance constitutionally sufficient. Claims that counsel was deficient for failing to call additional witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of

---

[7] The mitigating factors submitted to the jury included: (1) whether the defendant was under an extreme emotional or mental disturbance at the time of the crimes; (2) whether the defendant appreciated the criminality of his conduct or whether he could conform his conduct to the requirements of law; (3) the defendant's age; (4) the defendant's lack of prior criminal history; and (5) any other matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought during the trial that the jury deems mitigating. The only aggravating factor submitted was whether the capital offense was committed for pecuniary gain during the course of armed robbery, to which the jury answered "yes."

No. 10-70018

trial strategy and speculation about what witnesses would have said on the stand is too uncertain. Woodfox, 609 F.3d at 808. This court's precedent establishes that a petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Petitioner has not met the requirements set out in *Day* as to his two post-conviction experts, as neither expert's declaration contains a statement that the expert was willing and available to testify at trial. *See Woodfox*, 609 F.3d at 808 (experts required to state that they could and would have testified at original trial even where they otherwise state they would be willing to testify in future proceedings). Having found that Petitioner has not made a substantial showing of the denial of a constitutional right, we deny Petitioner's request for a COA on his ineffective assistance of counsel claim.

## B. Evidentiary Hearing

We also deny a COA on the question of whether the district court abused its discretion in denying Petitioner's request for an evidentiary hearing on his claim. To find an abuse of discretion, we must be convinced that the state court did not provide Petitioner with a full and fair hearing and if Petitioner's factual allegations were proven true, he would be entitled to habeas relief. *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000). No showing has been made that would make this point debatable.

## IV. Conclusion

Petitioner's request for a COA on two issues is DENIED.

15