# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 8, 2012

No. 12-70003

Lyle W. Cayce
Clerk

EDWIN HART TURNER,

Plaintiff-Appellee

v.

CHRISTOPHER B EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS; EMMITT L SPARKMAN, Superintendent, Mississippi State Penitentiary at Parchman,

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
(3:12-CV-64)

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Edwin Hart Turner is scheduled to be executed by the State of Mississippi on February 8, 2012. Seeking to delay his execution, Turner filed a motion for a temporary restraining order and a preliminary injunction in the district court. Turner's motion was based upon a claim that the Mississippi Department of Corrections had infringed upon his constitutional right of access to the courts.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-70003

The district court, finding that Turner had satisfied the requirements for a temporary restraining order, granted his motion and halted his execution for 14 days, until February 20, 2012. The State appealed and filed a motion to vacate the temporary restraining order. For the following reasons, the State's motion to vacate the stay of execution is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Edwin Hart Turner ("Turner") was convicted of two counts of capital murder and sentenced to death in February 1997. After pursuing, and failing to receive, state habeas relief, Turner turned to the federal courts for habeas corpus relief on the basis of ineffective assistance of counsel. In his federal habeas proceedings, Turner based his ineffective assistance claim on an argument that his counsel failed to properly research and present expert evidence on his longstanding mental illness, which might have mitigated his death sentence. In February 2010, the U.S. District Court for the Northern District of Mississippi denied Turner's petition for a writ of habeas corpus. *Turner v. Epps*, No. 4:07CV77-WAP, 2010 WL 653880 (N.D. Miss. Feb. 19, 2010); *Turner v. Epps*, No. 4:07CV77-WAP, 2010 WL 1529244 (N.D. Miss. Apr. 15, 2010). The Fifth Circuit denied Turner a certificate of appealability in February 2011. *Turner v. Epps*, 412 F. App'x 696, 704–06 (5th Cir. 2011). The Supreme Court denied Turner's petition for certiorari on January 9, 2012, and the State[1] moved to schedule Turner's execution date.

On January 17, 2012, prior to the scheduling of his execution, Turner filed a motion with the Mississippi Supreme Court to secure a psychiatric evaluation by Dr. Donna Schwartz-Watts ("Schwartz-Watts") and both a PET scan and an fMRI scan, all at his own expense. He did so pursuant to the Mississippi

---

[1] We refer to defendants–appellants as the State.

No. 12-70003

Department of Correction's ("MDOC") Standard Operating Procedure 20-01-01 ("SOP"), which provides:

> Any physician, psychologist, sociologist or any other persons obtained by an offender's attorney of record to interview, evaluate or otherwise consult with the offender must submit to the normal protocol for attorney of record visits with the exception that a court order must be obtained prior to setting up the visit.

Turner offered two reasons for seeking access to the evaluation and testing. First, he contended that such access would support a post-conviction petition that the Eighth and Fourteenth Amendments bar the execution of individuals with severe mental disorders or disabilities which, at the time of their offenses, impair the abilities of such individuals (a) to appreciate the nature, consequences, or wrongfulness of their conduct; (b) to exercise rational judgment in relation to their conduct; and (c) to conform their conduct to the requirements of the law. Second, Turner asserted that expert access would support a petition for executive clemency. Turner also posited that his constitutional right of access to the courts guaranteed a right to expert access and testing.

On January 26, 2012, the Mississippi Supreme Court denied Turner's motion for expert access. The court explained that "[a]s Turner's requests relate to any eventual petition for clemency from the Governor, the Court finds the power to grant reprieves and pardons is vested exclusively in the Governor . . . and any request for testing as it relates to a clemency request should be dismissed without prejudice. Turner may pursue relief from the Executive Branch." Furthermore, as Turner had "failed to exhibit a violation of any federal or state constitutional or statutory right," the court concluded that no further testing or expert evaluation was required in his case. The court also rejected Turner's successive motion for post-conviction relief, explaining that Turner had previously been examined by mental health professionals and failed in two previous appeals based on the disproportionality of the death sentence given his

3

alleged mental illness. The court further denied Turner's request that it extend the reasoning of *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Roper v. Simmons*, 543 U.S. 551 (2005), to bar the execution of capital petitioners with "severe mental disorders." The Mississippi Supreme Court then set Turner's execution for February 8, 2012.

Pursuant to Federal Rule of Civil Procedure 65, Turner filed for a temporary restraining order ("TRO") and a preliminary injunction in the U.S. District Court for the Southern District of Mississippi to halt his execution pending the resolution of a § 1983 claim regarding the SOP.[3] In support of his motion, Turner made four arguments against the SOP: (1) that it violates various state and federal statutes governing both post-conviction and executive clemency applications; (2) that the denial of access to experts in support of a post-conviction application for relief violates the Due Process Clause of the Fourteenth Amendment; (3) that the denial of access to experts in support of an executive clemency petition violates the Due Process Clause of the Fourteenth Amendment; and (4) that the denial of access to experts violates the Eighth Amendment's prohibition on cruel and unusual punishment.

The district court granted Turner's request for a TRO and halted his execution for a period of 14 days, until February 20, 2012, and explained that prior to that date, it would convene the parties for a conference to determine whether to extend the injunction. The district court found that Turner had satisfied the four required elements for the issuance of a TRO.[4] The district

---

[3] Turner also requested additional relief, including that the State be enjoined from enforcing the SOP, that the State grant Turner access to experts prior to any decisions regarding executive clemency and successive post-conviction relief, and that the State grant Turner access to neuro-imaging tests to be conducted in aid of his applications for both executive clemency and post-conviction relief.

[4] *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (A temporary restraining order requires: "1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the

court "ha[d] no difficulty in finding that the second, third, and fourth prongs . . . favor[ed] Turner." The court explained that "an execution achieved through (what Turner purports to be) an unconstitutional act is a harm that far outweighs any harm incurred by a delay of Turner's execution."

With respect to the first element, the court found merit in Turner's argument that Mississippi's regulation had denied him the right of access to the courts. The court framed the issue as "whether the State . . . violated the United States Constitution by requiring that Turner obtain a court order before he can be seen by a medical professional in anticipation of litigation."

The court concluded that Turner did have a "constitutional right of access to the courts" based on his request "for prison officials to provide a tool—namely access to Dr. Schwartz-Watts—in order to attack his death sentence collaterally." The district court also rejected the notion that the SOP is reasonably related to legitimate penological interests, explaining that the State "ha[d] not enunciated any practical, security-related result of requiring lawyer-obtained doctors to secure a court order, and [that] th[e] Court likewise [was] unable to conceive of one."

The district court also dismissed other arguments offered by the State. First, the district court rebuffed the State's claim that the three-year statute of limitations on Turner's § 1983 claim began when he became an MDOC inmate. Second, the district court concluded that previous efforts to litigate Turner's mental illness were irrelevant because Turner's action was not a collateral attack on his sentence, but a § 1983 claim seeking to remove a barrier to pursuing evidence that might permit Turner to attack his sentence or pursue a request for clemency.

---

injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.").

No. 12-70003

The State timely filed a notice of appeal and moved to vacate Turner's stay of execution.

## II.  DISCUSSION

### A.  Jurisdiction

A circuit court normally has no authority to review a TRO. *Faulder v. Johnson*, 178 F.3d 741, 742 (5th Cir. 1999).  However, circuit courts do have the authority to review preliminary injunctions pursuant to 28 U.S.C. § 1292(a)(1) (permitting interlocutory review of orders "granting, continuing, modifying, refusing or dissolving injunctions").  Thus, when a "district court's [granting] of [a] TRO ha[s] the same practical effect as the granting of a preliminary injunction, it is immediately appealable under 28 U.S.C. § 1292(a)(1)." *Jones v. Belhaven Coll.*, 98 F. App'x 283, 284 (5th Cir. 2004); *see also Belo Broad. Corp. v. Clark*, 654 F.2d 423, 426 (5th Cir. 1981) ("In certain circumstances the denial of a requested TRO can be considered denial of a preliminary injunction.").[5]

In determining whether a district court has ordered a TRO or preliminary injunction:

> The label appended by the requesting party or the judge is not conclusive as to its proper characterization.  The central inquiry goes to the nature and scope of the hearing that precedes the denial of the motion.  The denial of a so-called temporary restraining order is properly appealable when entered after a hearing in which all interested parties had an opportunity to participate, thus allowing for full presentation of relevant facts.

*Belo Broad. Corp*, 654 F.2d at 426.  As the Supreme Court has explained, in cases "where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited

---

[5] The rationale for this position is clear, as "[a] district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding." *Sampson v. Murray*, 415 U.S. 61, 86–87 (1974).

order as a temporary restraining order seems particularly unjustified." *Sampson v. Murray*, 415 U.S. 61, 87 (1974).

In the capital context, at least two sister circuits have found TROs halting executions to be, in effect, preliminary injunctions and subject to appellate review. In *Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007), a Tennessee inmate filed a complaint challenging the state's execution procedures and was granted a temporary restraining order until a hearing scheduled for 10 days after the grant of the TRO. *Id.* at 901. The Sixth Circuit held that it had jurisdiction to review the district court's decision, concluding that "the [district court's] order has the practical effect of an injunction, which simultaneously operates to stay Workman's long-delayed execution and to give us authority to review it." *Id.* at 904 (internal quotation marks and citation omitted). Under similar circumstances and with similar reasoning, the Tenth Circuit also held that it had jurisdiction to review a district court's granting of a TRO based on an inmate's § 1983 claim challenging Oklahoma's execution procedures. *Boltz v. Jones*, 182 F. App'x 824, 824–25 (10th Cir. 2006).

Given that the district court took evidence in the form of affidavits, received written submissions from counsel, and heard oral arguments on this matter, as well as the fact that the district court's TRO would delay Turner's execution beyond its scheduled date, we conclude that the district court's order is a preliminary injunction, rather than a TRO. Consequently, the panel has jurisdiction to review the district court's decision pursuant to 28 U.S.C. § 1292(a).

## B. The Nature of Turner's Claim

The State argues that Turner's lawsuit was not cognizable under § 1983 and rather amounted to a successive habeas petition, over which the district court lacked jurisdiction. We assume without deciding that Turner's lawsuit can be brought pursuant to § 1983.

No. 12-70003

In *Skinner v. Switzer*, 131 S. Ct. 1289 (2011), the Supreme Court considered, *inter alia*, whether "a convicted [Texas capital] prisoner seeking DNA testing of crime-scene evidence [could] assert . . . a claim in a civil rights action under 42 U.S.C. § 1983, or [whether the] claim [was] cognizable in federal court only when asserted in a petition for a writ of habeas corpus under 28 U.S.C. § 2254[.]" *Id.* at 1293. The Supreme Court concluded that Skinner could bring his claim as a § 1983 suit. The Court explained that its precedents held that "[w]hen 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' . . . § 1983 is not an available remedy. . . . 'But if . . . the plaintiff's action, even if successful, will *not* demonstrate the invalidity of [his conviction or sentence], the [§ 1983] action should be allowed to proceed . . . .'" *Id.* at 1298 (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)) (alterations in original). Drawing on this precedent, the Court observed that Skinner's "[s]uccess in his suit for DNA testing would not 'necessarily imply' the invalidity of his conviction. While test results might prove exculpatory, that outcome [would be] hardly inevitable; . . . [the] results might prove inconclusive or they might further incriminate Skinner." *Id.*

*Skinner* appears to be controlling in Turner's case. But we need not decide that. We can and will assume that Turner's case may properly proceed under § 1983; for the reasons stated below, we conclude that his claim lacks a substantial likelihood of success on the merits.

## C. Standard of Review

A preliminary injunction is an "extraordinary remedy" that should only issue if the movant establishes:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

8

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). While "the standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction is stringent, the standard of appellate review is simply whether the issuance of the injunction, in the light of the applicable standard, constituted an abuse of discretion." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32 (1975). Despite this deferential standard, "a decision grounded in erroneous legal principles is reviewed *de novo*." *Byrum*, 566 F.3d at 445 (internal quotation marks and citation omitted). As to each element of the district court's preliminary injunction analysis, the district court's findings of fact "are subject to a clearly-erroneous standard of review," while conclusions of law "are subject to broad review and will be reversed if incorrect." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (internal quotation marks and citation omitted).

## D. The Right of Access

Turner claims that the SOP infringed his right of access to the courts, as it prevented him from collecting evidence to support either a successive habeas petition or an application for clemency. We find that Turner has not demonstrated a substantial likelihood of success on this claim.

"Prisoners have a constitutional right of access to the courts that is 'adequate, effective, and meaningful.'" *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). However, this right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Thus, in the context of prison library systems for example, the Supreme Court has explained that an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351. This makes clear that an inmate who brings

No. 12-70003

a § 1983 claim based on his right of access to the courts must be able to show that the infringing act somehow defeated his ability to pursue a legal claim. That is, "[a] prisoner must show he incurred an actual injury in order to prevail on a denial of access claim." *Toppins v. Day*, No. 02-31016, 2003 WL 21757342, at \*5 (5th Cir. June 26, 2003) (citing *Lewis*, 518 U.S. at 350–52); *see also Bounds*, 430 U.S. at 825 ("The inquiry is . . . whether . . . [various] forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."). The right of access does not create "an abstract, freestanding right," but exists to vindicate other rights. *Lewis*, 518 U.S. at 351.

The relevant question, then, is what kind of a legal claim Turner would pursue with his expert access. The district court's opinion has little to say on this, other than noting that access to Schwartz-Watts and further neurological testing would permit Turner to "attack his death sentence collaterally." But the Supreme Court has made explicit that the right of access requires that a prisoner show an actual injury and an actual legal claim. *Lewis*, 518 U.S. at 350–52.

Turner raises no viable legal claims. Turner does not claim that he is mentally retarded, *Atkins v. Virginia*, 536 U.S. 304 (2002), that he is insane, *Ford v. Wainwright*, 477 U.S. 399 (1986), or that he was under the age of 18 at the time of his offense, *Roper v. Simmons*, 543 U.S. 551 (2005). Rather, he argues that the Constitution bars the execution of "individuals with severe mental disorders or disabilities, which, at the time of the offense, impaired [their] ability (a) to appreciate the nature, consequences or wrongfulness of [their] conduct; (b) to exercise rational judgment in relation to [their] conduct; or (c) to conform [their] conduct to the requirements of the law." He cites no

10

legal authority for this proposition,[6] and, in fact, we have repeatedly rejected requests to hold that generalized allegations of mental illness bar execution. *See Ripkowski v. Thaler*, 438 F. App'x 296,303 (5th Cir. 2011) ("The Supreme Court has never held that mental illness removes a defendant from the class of persons who are constitutionally eligible for a death sentence."); *In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006). Accordingly, even if Turner received access to his experts and even if these experts were able to conclusively prove that Turner fell into the category of individuals he describes, he would still have no constitutional right not to be executed.

The district court's reliance on *Ivey v. Harney*, 47 F.3d 181 (7th Cir. 1995), is unpersuasive in this regard. The critical quote from that case—"[p]risoners have constitutional rights of access to the courts, and as a prison must permit legal mail to come and go, so it must permit lawyers and physicians access to the prisoner"—is dicta, devoid of any citation to precedent and embedded in a longer discussion of hypotheticals that buttress Judge Easterbrook's final conclusion that a court may not order a jailor to transport a prisoner outside the facility to acquire evidence in a suit to which the jailor is not a party. *Id.* at 186. But even more problematically, the claim at issue in that case—a § 1983 claim based on a slip and fall in the prison showers—was not legally impossible to show; it was merely a factually difficult case to prove. *Id.* at 182, 186. That is nearly the antipode of Turner's situation, where no amount of the evidence Turner seeks can create a viable claim for collateral relief.

---

[6] Indeed, this three-part test is not Mississippi's definition of insanity. Mississippi adheres to the *M'Naghten* standard for determining whether a defendant is insane. "To be deemed insane under the *M'Naghten* test, the defendant must be laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing or (2) if he did know it, that he did not know that what he was doing was wrong." *Nolan v. State*, 61 So. 3d 887, 895 (Miss. 2011) (internal quotation marks and citation omitted).

No. 12-70003

Indeed, Turner seeks access to Schwartz-Watts and neurological testing to establish a basis for successive habeas relief. But such relief would be barred at both the state and federal levels. Turner exhausted his direct appeals when the Mississippi Supreme Court, after affirming both his convictions and his sentence, denied his petition for rehearing on March 31, 1999. The Mississippi Supreme Court also denied Turner post-conviction relief and denied his motion for a rehearing on this issue on April 26, 2007. Under Mississippi law, successive motions for post-conviction relief are barred unless the prisoner falls into one of several exceptions. MISS. CODE ANN. § 99-39-23(6). Turner, even equipped with his desired evidence, would fall into none of these exceptions. He has not filed a motion indicating that he has become mentally ill subsequent to his death sentence, MISS. CODE ANN. § 99-19-57(2)(a), nor is it clear he is even "mentally ill" under the prevailing statutory definition.[7] Turner cannot "demonstrate either that there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence." MISS. CODE ANN. § 99-39-23(6). Finally, even if the evidence Turner seeks was "not reasonably discoverable at the time of trial," he has not alleged and could not show that this evidence "is of such nature that it would be *practically conclusive* that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." *Id.* (emphasis added). Indeed, Turner's mental

---

[7] The definition is:

> For the purposes of this subsection, a person shall be deemed to be a person with mental illness if the court finds that the offender does not have sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the impending fate that awaits him, and a sufficient understanding to know any fact that might exist that would make his punishment unjust or unlawful and the intelligence requisite to convey that information to his attorneys or the court.

MISS. CODE ANN. § 99-19-57(2)(b).

No. 12-70003

illness and whether it mitigates his death sentence has been thoroughly litigated in both the federal and state court systems. *See Turner v. State*, 953 So. 2d 1063, 1073–74 (Miss. 2007); *Turner v. Epps*, No. 4:07CV77-WAP, 2010 WL 653880, at *10–18 (N.D. Miss. Feb. 19, 2010); *Turner v. Epps*, No. 4:07CV77-WAP, 2010 WL 1529244, at *2–4 (N.D. Miss. Apr. 15, 2010); *Turner v. Epps*, 412 F. App'x 696, 704–06 (5th Cir. 2011). This extensive legal history means that Turner cannot show that any further interviews or testing would be have been "practically conclusive" in affecting his sentence. Thus, Turner cannot demonstrate that his evidence would permit him to file a successive state motion for post-conviction relief.

Turner is also barred from seeking federal habeas relief. Turner was previously denied a certificate of appealability by our court, *Turner*, 412 F. App'x at 706, meaning that any future habeas petitions he might bring would be successive. AEDPA makes clear that a claim presented in a successive habeas corpus application that was not presented in a prior application shall be dismissed unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). The burden would be on Turner to demonstrate that he falls into one of these two categories. *See Mathis v. Thaler*, 616 F.3d 461, 467 (5th Cir. 2010). He can make neither showing. He points to no new Supreme

No. 12-70003

Court law that supports his claim that severe mental defects suffice to make a prisoner ineligible for a death sentence.

Moreover, § 2244(b)(2) only permits a successive habeas petition where the petitioner produces new evidence casting doubt on whether he is "guilty of the underlying offense." We have concluded that this provision does not extend to evidence casting doubt on the validity of a prisoner's sentence. *See In re Webster*, 605 F.3d 256 (5th Cir. 2010), *cert. denied*, *Webster v. United States*, 131 S. Ct. 794 (2010). In *Webster*, a prisoner asked "for another chance to argue that he is mentally regarded and therefore ineligible for the death penalty," on the basis of newly discovered documentary evidence that he contended would show that no reasonable factfinder could conclude that he is not retarded. *Id.* at 257. Interpreting 28 U.S.C. § 2255—the federal analog to § 2244—the panel concluded that "a petitioner cannot bring a successive claim under § 2255(h)(1) where he does not assert that the newly discovered evidence would negate his guilt of the offense of which he was convicted, *i.e.*, capital murder." *Id.* The panel also explained that because its interpretation was based on the "plain language" of § 2255, its decision applied with equal force to § 2244(b)(2)(B)(ii). *Id.* at 257–58 & n.2. *Webster* makes clear that Turner's acquisition of mitigating evidence would not avail him in seeking federal habeas relief; any claim he might have is therefore foreclosed by the plain language of § 2244.

Thus, even if Turner had full and unfettered access to the evidence he desires, it cannot provide him with the relief he ultimately seeks—an opportunity to void his death sentence in either state or federal court. "Success" on his right of access claim would, therefore, be meaningless and Turner therefore cannot demonstrate a substantial likelihood of success on the claims that underlies the TRO.

**E.  Clemency**

No. 12-70003

A second issue is whether Turner's right of access permits him to seek expert assistance in "laying a foundation for a request for clemency." Turner claims that his lack of access to experts threatens his "due process right of access to the clemency system of the State of Mississippi." It is clear that some minimal due process safeguards do apply to clemency procedures. *See Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288–89 (1998) (O'Connor, J., concurring) (plurality opinion). But these requirements really are *minimal*, as Justice O'Connor explained: "Judicial intervention *might*, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* at 289 (emphasis added). Turner has not made any argument that the SOP or the Mississippi clemency procedure falls below this threshold. He "d[oes] not provide evidence that he would be denied access to the [clemency] process or evidence that the decision will be made arbitrarily." *Roach v. Quarterman*, 220 F. App'x 270, 275 (5th Cir. 2007); *see also Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343, 344–45 (5th Cir. 1999). As Turner's lack of access to experts does not bar him from seeking clemency, he has not properly stated a due process violation.

Moreover, both Turner and the district court misread the Mississippi Supreme Court's statements regarding clemency. The state supreme court explained, "[a]s Turner's requests relate to any eventual petition for clemency from the Governor, the Court finds that the power to grant reprieves and pardons is vested exclusively in the Governor [by the state constitution] and that any request for testing as it relates to a clemency request should be dismissed without prejudice. Turner may pursue relief from the Executive Branch." This does not create the "Catch 22" that Turner envisions where first the Governor must decide whether a pre-clemency evaluation should proceed, but applicants must seek a court order from the state courts, in order to access experts for the

15

evaluation, which then redirect the applicant back to the Executive Branch. Rather, the Mississippi Supreme Court made clear, consistent with Fifth Circuit precedent, that "pardon and commutation decisions are not traditionally the business of courts and . . . are subject to the ultimate discretion of the executive power." *Faulder*, 178 F.3d at 344. This decision, however, does not foreclose to Turner the possibility of applying for clemency, even if it does potentially result in a less effective and compelling clemency petition. However, neither the district court nor Turner have indicated that there is a due process right to a more effective or compelling clemency application. And without such a right, there is no requirement that the State grant Turner access to experts.

## F. Remaining Preliminary Injunction Requirements

The district court said little regarding the remaining three requirements for a preliminary injunction. *See Byrum*, 566 F.3d at 445. Although the second factor clearly favors Turner, the district court did not give appropriate weight to the third and fourth factors, and specifically the State's interests in carrying out the execution as scheduled and the public's interest in the matter. A stay of execution is an equitable remedy, and such a remedy "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (citing *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). Indeed, the Supreme Court has recognized that "[i]nmates file [§ 1983] actions intending to forestall execution," *id.* at 581, and has emphasized that "[t]he federal courts can and should protect States from dilatory or speculative suits . . . ." *Id.* at 585. Accordingly, "[a] court considering a stay must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* at 584 (quoting *Nelson*, 541 U.S. at 650). These considerations

further weigh against staying Turner's execution and indicate that the district court abused its discretion in granting the preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, the State's Motion to Vacate the Stay of Execution is GRANTED.

No. 12-70003

HAYNES, Circuit Judge, dissenting:

I respectfully dissent. Although the request before this court was styled as a "motion to vacate stay of execution," it is an appeal from a temporary restraining order ("TRO") and seeks an order vacating the TRO; thus, I conclude that we lack jurisdiction over this appeal.

Generally, neither the grant nor denial of a TRO is immediately appealable. *See In re Lieb*, 915 F.2d 180, 183 (5th Cir. 1990). Here, the decision to grant the TRO was not, as the majority opinion concludes, the equivalent of granting a preliminary injunction (which is immediately appealable) because the order confined the period to fourteen days. *Compare* Fed. R. Civ. P. 65(b) (noting that a TRO expires, by its terms, within 14 days of issuance), *with* Fed. R. Civ. P. 65(a) (providing no time for expiration of a preliminary injunction); *cf. Sampson v. Murray*, 415 U.S. 61, 86 (1974) (noting that "a temporary restraining order *continued beyond the time permissible under Rule 65* must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions"). Here, unlike *Sampson*, the district court's TRO did *not* extend beyond the time permissible under Rule 65. Indeed, the State itself argued to the district court that it was unprepared for a preliminary injunction, and all agreed that the matter before the court was solely brief, temporary relief in the form of a TRO. Under these facts, the district court's ruling was not a preliminary injunction masquerading as a TRO, and we lack jurisdiction. *See Harris v. Johnson*, 376 F.3d 414, 415 n. 1 (5th Cir. 2004) (a death penalty case in which the court stated that a "TRO would not normally be appealable" but found jurisdiction because the district court certified the issue under 28 U.S.C. §1292(b)); *Faulder v. Johnson*, 178 F.3d 741, 742 (5th Cir. 1999) (a death penalty

case holding: "It is well settled that this court has no appellate jurisdiction over the denial of an application for a temporary restraining order.")

Additionally, contrary to other Fifth Circuit opinions that have reviewed the denial of a TRO when a party's substantial rights have been irreparably injured, *see United States v. Wood*, 295 F.2d 772, 778 (5th Cir. 1961), the State of Mississippi's substantial rights have not been irreparably injured by the district court's order which, at most, has the effect of postponing Turner's execution for fourteen days. As Turner argued: "A state cannot avoid review of the constitutionality of its procedures by creating [an] artificial crisis through its discretionary scheduling orders." I would dismiss this appeal for want of appellate jurisdiction and await an appealable order to address the merits of Turner's claim for relief.