**John E. WINFIELD, Appellee**

v.

**Troy STEELE, Warden, Potosi Correctional Center, et al., Appellants.**

**No. 14–2392.**

United States Court of Appeals, Eighth Circuit.

June 16, 2014.

Joseph Luby, Jessica Sutton, Death Penalty Litigation Clinic, Kansas City, MO, for Appellee.

John E. Winfield, Mineral Point, MO, pro se.

Stephen David Hawke, Assistant Attorney General, Attorney General's Office, Jefferson City, MO, for Appellants.

Before MURPHY, MELLOY, COLLOTON, Circuit Judges.

## ORDER

Appellants' motion to vacate the district court's stay order is denied.

## COLLOTON, Circuit Judge, dissenting.

I would grant the State's motion to vacate the stay of execution entered by the district court on June 12. Whatever minimal procedural safeguards apply to executive clemency proceedings do not warrant a stay of execution by the courts for John Winfield. Winfield's allegation is that state actors discouraged Terry Cole, the staff laundry manager at Potosi Correctional Center, from providing a declaration of support that could be included with Winfield's clemency request to Governor Nixon of Missouri. The record shows, however, that Cole signed the declaration in support of clemency on May 22, 2014, and the Department of Corrections has provided Cole's declaration to the governor. The governor thus has the information from Cole that could support a grant of clemency. The decision whether to grant or deny clemency is within the governor's discretion.

In *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), the Supreme Court rejected a claim that Ohio's clemency proceedings violated an inmate's rights under the Due Process Clause. A plurality of four Justices, citing *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), emphasized that a request for clemency "is simply a unilateral hope," 523 U.S. at 282, 118 S.Ct. 1244 (internal quotation omitted), and suggested that the Due Process Clause has no application to the discretionary clemency process. A concurring opinion of four Justices disagreed on the latter point and concluded that "some *minimal* procedural safeguards apply to clemency proceedings," *id.* at 289, 118 S.Ct. 1244 (O'Connor,

J., concurring in the judgment) (emphasis in original), but rejected the inmate's challenge to Ohio's procedures. Justice O'Connor wrote that "[j]udicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id. Cf. District Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67–68, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009) (stating that "noncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law," and that an inmate could not "challenge the constitutionality of any procedures available to vindicate an interest in state clemency.") (emphasis in original).

A divided panel of this court in *Young v. Hayes*, 218 F.3d 850 (8th Cir.2000), ruled that an inmate stated a claim under the Due Process Clause when he alleged that a prosecuting attorney threatened to fire one of the lawyers under her supervision if the subordinate provided information to the governor in connection with a clemency petition that the inmate wished to file. Although the prosecuting attorney later withdrew her objection, and the subordinate provided an affidavit to the governor, the *Young* panel granted a stay of execution, noting among other things that the subordinate's affidavit covered only one of the two subjects that she initially agreed to testify about. *Id.* at 852. Because the dissenting opinion of Justice Stevens in *Woodard* agreed with the concurring opinion of Justice O'Connor on the availability of minimal procedural safeguards under the Constitution, 523 U.S. at 290–91, 118 S.Ct. 1244 (Stevens, J., dissenting), the panel in *Young* rejected the district court's holding in that case that

there was no constitutional right to due process of law in connection with a clemency proceeding. 218 F.3d at 852–53.

The scenario described in *Young* apparently has not arisen in other published decisions, although some courts have addressed related issues. The Sixth Circuit rejected a due process claim from an inmate who alleged that the State fabricated expert testimony during clemency proceedings, reasoning that any fraud would have been upon the governor of the State or the state board of probation and parole, not upon the court, and that it is not the court's duty "to determine the quality of the evidence considered by the governor or his board." *Workman v. Bell*, 245 F.3d 849, 852–53 (6th Cir.2001). The Kentucky Supreme Court held that a State did not violate the Due Process Clause when it denied a death-row inmate permission to interview guards, an administrator, and other inmates to develop information for use in a clemency petition. *Baze v. Thompson*, 302 S.W.3d 57, 58, 60 (Ky. 2010). In *Faulder v. Texas Board of Pardons & Paroles*, 178 F.3d 343 (5th Cir. 1999) (per curiam), the Fifth Circuit denied a stay of execution for an inmate who alleged that the state board "violated applicable state law and its own regulations," gave inadequate notice of the issues it would consider, acted in secrecy, refused to hold hearings, gave no reasons for its decisions, and kept no record of its actions. *Id.* at 344–45. *See also Turner v. Epps*, 460 Fed.Appx. 322, 331 (5th Cir.2012) (per curiam) (holding that denial of motion for access to experts to conduct evaluation at inmate's expense to support clemency petition does not violate the Due Process Clause, "even if it does potentially result in a less effective and compelling clemency petition")

It is unclear whether the Supreme Court would agree with the due process rationale of *Young*, but accepting that decision as circuit precedent, it should not be extended to uphold a stay of execution under the circumstances of this case. Winfield alleges that state actors discouraged Cole from providing a declaration in support of clemency to be used during the clemency process. Winfield seeks a stay of execution until such time as he can present "a complete application for clemency free of state actors' interference." R. Doc. 1, at 15. The record shows, however, that Cole signed his declaration on May 22, 2014, and the Department of Corrections furnished it to the governor's office on June 12, 2014. Unlike in *Young*, where the witness's eventual affidavit for the governor allegedly omitted information that she had proffered to the inmate's counsel about the use of peremptory challenges to remove black jurors, 218 F.3d at 852, Cole's signed declaration includes the favorable information in support of Winfield's cause that Cole proffered to Winfield's counsel. The potential that Cole might later add comments about his interpretation of the events that led to this lawsuit is not sufficient to justify a stay of execution. There is no evidence that any other state employee has been deterred from speaking in support of clemency for Winfield.

The procedures employed by the state actors in this process may not have been ideal, but they do not approach the arbitrariness contemplated by Justice O'Connor in *Woodard*: a coin flip or an arbitrary denial of access to any clemency process. The situation is different from *Young*, because the governor has received the favorable information from the state employee who wished to support clemency. Clemency is a matter of grace committed to the executive department of the State. *See* Mo. Const. art. IV, § 7; Mo. Rev. St. §§ 217.800(1), 552.070. The decision whether to let the execution proceed or to

grant clemency, based on all of the information furnished, should rest with the governor.